Case number 22-5155, Lassana Magassa, Appellants v. Transportation Security Administration, Ms. Jump for the Appellants, Ms. Baldivia for the Appellee. Your Honors, may it please the Court, my name is Christina Jump and I am here on behalf of the Appellant Lassana Magassa. The basic purpose of the Freedom of Information Act reflects a general philosophy of full agency disclosure, and FOIA's exemptions must be narrowly construed. This Court held that in Epic v. DHS in 2015, and that holds true today. Unfortunately, the District Court's ruling in this case does not reflect Congress's intent or this Court's application of it. The assertion of Exemption 3 in this matter by the Government fails because there is an insufficient Vaughn Index, which bears that title as a Vaughn Index, but lacks the substance that the Courts and the Freedom of Information Act require. Categories, as the Government submits in a Vaughn Index in this matter, must be sufficiently distinct under prison legal news. But here, the Defendant submits one category for 182 fully withheld pages, and one general category with no specifics that includes language like, including some of these criteria and any comments which may be used, and does not reasonably identify the types of documents with enough specificity to meet this Court's standard. In Summer v. Department of Justice, this Court held that the Vaughn Index must describe each document or deletion and make specific findings as to how the exemption relates to each document. That did not happen here. In addition, the Blair and Miller declarations used may and could repeatedly throughout them. In Founding Church of Scientology, this Court held that categories must be specific because each withholding must be specifically identified. The Government retains a high burden because anything less would not meet the exacting standards of the Freedom of Information Act. Ms. Jumpa, I mean, the Blair Declaration here gave a number of reasons and described the withholding in fairly significant detail. I mean, what more is the Government required to say or do? Your Honor, I believe that the, first of all, the Vaughn Index does not contain that specificity at all. And the, are you talking about the Blair Declaration or the Miller Declaration? Yeah. The Miller Declaration gives extensive detail on the process and on the procedural history at the administrative level, but then jumps to more conclusory statements. And as does the Blair Declaration, which relies on the presumption, as the Government does in its briefs as well, that simply stating the exemption applies should be entitled to deference without going into any specifics. We also argue in our briefs, and I'd like to present here, that the District Court failed entirely to do a segregability analysis and did not address that at all. Both the Blair Declaration in Footnote 1 and Appellee's response in Footnote 7 referenced that in-camera review would be available to more specifically show the applicability of the exemptions, but that did not happen at the District Court level. Can I just go back? You said that the Blair Declaration didn't have sufficient detail. And so, for example, on Exemption 3, it does explain that the one category of requested documents all relates to screening procedures. And then it says if this material was made public, it could help or enable terrorists to evade those screening procedures. That seems logical and plausible. And so, what more did they have to say to withhold all of the screening procedures? Your Honor, I would say in response to that, that while there may be some level, and I don't doubt that there is some level at which details about the screening procedures should not be provided, there is also the compelling interest in the public understanding the process and the procedures used by the government. And that's where a segregability analysis would come in to determine how much of it could potentially be produced, which would be relevant. Again, under Roth v. Department of Justice, this Court held that agencies must still disclose all reasonably segregable portions of exempt records or of records which have exempt portions. And in-camera review is the appropriate way to identify this. Again, the public has a great interest in information which eliminates government agencies' methods, which is what we're looking at here. And we cite in our reply brief, as well as at the district court level, two examples and a string of case representative cases, which identify why the TSA procedures, and particularly regarding DHS trip claims, is in fact something that is of the public interest, that is a compelling public interest to know. And so with that, there is, again, it is so essential that segregability occur as the district court of D.C. held in Jarvik v. CIA, that segregability analysis is so essential to FOIA that the failure of that alone is remandable error. I understand this is a D.C. district court, but it is consistent with this Court's holding in Epic v. DHS and the other cases that we've cited here today, as well. So counsel, generally, that it seems to me you face a difficult burden anyway, given the nature of what the government does know about your client and what you have disclosed about your client. Given the long history and the repeated statements of deference here, what do you understand to be your burden in order to avoid these precedents? In other words, you can talk about segregability, you can talk about some of the other decisions, but why must the government do more than it did here when it knows what you have already disclosed about your client? Your Honor, we go to two points in response to that. The first being that, again, returning to Roth v. U.S. Department of Justice, that agencies still must disclose the reasonably segregable portions of requested records, and that agencies have the burden to show how privacy interests of an individual outweigh the public's interest in those records. There's no question about all of those generalities. The problem, it seems to me, you face in part is that those are well-established statements of law, and you have to overcome them in some way. Courts, including this court, have repeatedly affirmed the type of what you would describe as limited disclosure by the government in these types of cases. What is it that's unique about your client's case such that it would cause this court to either reconsider or narrow or recharacterize some of the statements that you have cited in our precedent? Your Honor, two quick points in response to that. I would say that, first of all, the fact that it is our particular client, and whatever his outside interest may be, would have under perioperative and Horner no bearing on the outcome of this, as these documents, if producible, should be produced to any person who does request them. No question about that, but you have years and years of precedent, not only in this circuit, but other circuits in the Supreme Court. Other than the very early general statements in Rose, et cetera, by the Supreme Court, what is it that takes your case out of the scope of these previous decisions? In other words, as Judge Rao pointed out and Judge Garcia pointed out, statements have to be viewed contextually here, and so the declarations. These two declarants have been doing this for a long time, and sometimes we sent their declarations back saying they were insufficient, but it seems to me that's a difficult burden, and you may be able to meet it, but we need something very specific. Your Honor, in that regard, just very briefly, as I do know at the time, but I want to respond to your question, I would say that Mr. Magasi here does identify his interest in understanding the procedures that affect him, as well as many other people. He points to his substantial interest there. The government, again, tries to make the word substantial be a more minimal burden on itself, but in Niskanen v. PRC, this court held to the contrary, that that does remain a burden, and that remand is the appropriate place, really, to do that segregability analysis and to get into the details. It may end up that all of these same information remains not producible or not discoverable through the Freedom of Information Act, but as it stands right now, with what he's requested, with the interest that he has shown, with the representative cases that we've identified that support this interest for the public, as well as for this individual who continues to hold a CEDA badge, as we've referenced, and as opposing counsel, as my colleague across the aisle referenced in Appellee's response brief. So he has an ongoing, continuing interest in knowing what the TSA is looking at regarding him, as it does, in fact, directly affect him, directly affect his livelihood. That is something that I think separates this case out, if needed, but in addition there is the compelling public interest in understanding how the government works, and as this court said in Hall, he's seeking information that will tell him what the government is up to, which is the kind of information that does advance the public's interest and knowledge in how the government works. With that, I will respect the clock and come back, hopefully, for just a few minutes at the end for rebuttal. Thank you very much. Good morning. May it please the court. Diana Valdivia on behalf of the Transportation Security Administration, or TSA. I'd like to begin this morning by addressing two points that were raised in the argument from my friend on the other side, specifically with respect to segregability and in-camera review of documents. My friend on the other side suggested that the court had erred in not making a segregability determination in this matter, or that there were not support in the agency's declaration to establish that the agency had conducted an adequate segregability analysis. However, the court below did make a segregability determination. It determined that the agency did, in fact, live up to its segregability obligations, and in doing so, it relied specifically on the Miller Declaration with respect to the Exemption 6 withholdings and the Blair Declaration with respect to the Exemption 3 withholdings. For those Exemption 6 withholdings, which had to do with the names of federal government employees from the TSA and from CBP, the Miller Declaration specifically states that the only thing that is under those redaction boxes are the names of the employees. So how that could be further segregated without violating the very privacy right that is at the heart of Exemption 6 is never explained by my friend on the other side. And, in fact, since the Miller Declaration explains exactly what was withheld and that nothing further could be segregated from the withholding, which is only a name, the court found that that was sufficient to meet the segregability obligations. With respect to the Exemption 3 withholdings, there is also significant information provided in the declaration of Mr. Blair, and Mr. Blair was the individual at the agency who had the ability to determine what constituted sensitive security information, which is exempt per statute, the Homeland Security Act. And he described that he did a personal review, not only his staff, but also he did a personal review of the information that was being withheld. He determined that it all constituted sensitive security information, which was exempt, not that it was intertwined inextricably with non-exempt information, but that everything that was withheld was, in fact, sensitive security information. And the district court was relying on those paragraphs of those declarations from Miller for Exemption 6 and Blair for Exemption 3 when it made its segregability determination. Let's talk a little bit about exhaustion here, the failure to exhaust his challenge to the Glomar response and the scope of the search. So what in the government's view was Mr. Magassa required to do administratively that he failed to do here? Well, Your Honor, this court has instructed in the Dettman decision that issue-specific exhaustion is required in the FOIA context. And, in fact, that's consistent with the agency's regulations, which instruct FOIA requesters who are appealing an agency's decision to specifically identify the issues, basically why they believe that the agency's production was insufficient. And here, Mr. Magassa, through his counsel, provided a three-page letter, which did meet that issue exhaustion requirement, and it did specify issues that he had at the agency's production. It nowhere put the agency on reasonable notice that among the issues that he was concerned with the agency's production was the adequacy of the search or the Glomar response. It was very detailed in its issues with the withholdings, those being 23 pages of records that were redacted and 182 pages that were withheld in full. And the FOIA officer receiving that appeal would not be on reasonable notice and did not, therefore, address an agency's response, the adequacy of the search, or the Glomar response. A little bit difficult because for the requester, because at that point, they obviously don't have the affidavits that come in later if there's litigation, and all they have is TSA's response. So just for example, the TSA response doesn't say, we are making a Glomar response. In other words, we certainly can't fault him for not using the words Glomar. And he does object to the general lack of specificity in invoking various exemptions. So I think I also have at least some question about what exactly he should have put in his appeal to challenge the Glomar response. Do you have a view on that? Your Honor, I would like to direct the court's attention to the agency's release letter, which is an attachment to the declaration of Terry Miller and is in the joint appendix. The court's indulgence, I can give you the exact page number. It begins at page 56 of the joint appendix, and it does, in fact, specifically include Glomar language. This is the third full paragraph down, saying to the extent that your request relates to records maintained by TSA, TSA can neither confirm nor deny whether an individual is on a federal watch list. This is the Glomar language. So the agency's response to the requester not only produced records, identified what was being withheld from the records that were produced, but also put the requester and his counsel on notice that there was a partial Glomar response. It was not a blanket Glomar response, but there was a partial Glomar response that to the extent his request relates to records maintained by TSA, TSA can neither confirm nor deny whether an individual is on a federal watch list. So if the requester and his counsel took issue with that, that could have been identified in their appeal. So they certainly were on notice at that time that that Glomar response had been issued. Just a methodological question then. Would you, if we agree his appeal fails on the merits of, for example, the Glomar issue, do we have to address exhaustion at all? Well, Your Honor, because FOIA exhaustion is not jurisdictional, it is not a special jurisdictional issue that the court need reach, but the failure to exhaust should not or cannot be excused by the court. So even though it is a jurisprudential doctrine, this court's decisions, which are interpreting Supreme Court precedent, make clear that when exhaustion is mandatory, as exhaustion is in FOIA. We know that from this court's decisions and OSB, Hidalgo, many decisions of this court hold that exhaustion is mandatory in FOIA. Where exhaustion is mandatory, the court cannot judicially excuse it, even when it is. Certainly couldn't reverse without addressing exhaustion, but we could affirm, right? Yes, Your Honor, you could affirm. But it's not discretionary, exhaustion. Exhaustion is mandatory. Right, because I thought you said that there was some discretion before you said it was mandatory, but you agree that exhaustion is mandatory. It's not jurisdictional, but it's mandatory. Correct, Your Honor. Exhaustion under the FOIA statute is mandatory. It is not jurisdictional, it's jurisprudential. But this court does not have the opportunity to excuse a failure to exhaust under this court's decision in Fleming. Even jurisprudential exhaustion, if the statute makes exhaustion mandatory, it cannot be judicially excused. Here, there was some exhaustion, but there was not exhaustion of all issues, and this court should not excuse the failure to exhaust those issues. Exhaustion is jurisprudential, are you saying it's not statutory? It is statutory, however, it is not jurisdictional. This court's decision in Hidalgo explained that because the statute does not make it so, it is not jurisdictional, it's jurisprudential. So you're saying it is a mandatory, statutory exhaustion requirement? Yes, Your Honor. Okay. It is. It's just not a jurisdictional one. Thank you. Any further questions? Judge Rogers, any further questions? No, thank you. Thank you. Then the TSA would request effectively that the court affirm the judgment. Thank you. Thank you. Thank you, Your Honors. I'd like to address two points that came up. First of all, that the district court properly held that there was exhaustion to the extent that it is required in Joint Appendix 65. There was a statement, we further appeal the agency's lack of production in response to Mr. McGoss' request overall. As noted by the district court at Joint Appendix 132 to 34, and as appellees recognized on page 29 of the response brief, that there was an argument to segregability at the administrative stage. Whether they construe that to be something that was properly worded or not is not the examination at the test. As this court knows, there is no requirement of technical precision under Institute for Justice v. IRS. Ms. Chum, can you point us to where there was a challenge to the Glomer response and to the scope of the search? I'm sorry, where there was? Where Mr. McGoss' raised the challenge administratively to the Glomer search or to the scope of the search? In the record, not in the district court's opinion? Yes, Your Honor. Again, I would point to at JA-65 and then additionally in the pages of the specific request, the request in each letter, where Mr. McGoss' consistently and repeatedly narrowed the search in response to the objections by the TSA. Each time it stated that he was not abandoning his entire search, he was not abandoning his entire request, and that he did continue to issue the full request, was only complying with what the TSA instructed was needed to perfect the request. And the appeal letter stated again that he was specifically appealing the lack of production as a whole and overall, and then also went into specific points. Appellees take issue with the language that says further, this is a request overall. Don't our precedents require issue-specific exhaustion? They do, and we believe that the language that is included does address that. Again, he can't know specifically what records exist, and there is a duty to construe liberally all of the requests. But again, we do stand on the requests that say that he did not abandon any part of his request in the appeal. He continued to appeal that the agency lacked its production in response to his request overall. And as the district court held, and based on the specific letters, we believe that that meets the requirements here. I would state also that under prison legal news, the identity of the requester and his intended use bears no relevance on whether the information is reducible or discoverable through the Freedom of Information Act. And finally, that as this court held in Niskanen, the release of names is not automatically always protected and determined to be a sufficient threat. There must be a connection shown to show why there is a sufficient threat simply by producing names. We're not asking for addresses or other identifying information, but simply asking for the names and that there has to be something that shows that it is clearly a threat to the individuals. Ms. Trump, I see you're out of time if my colleagues have no further questions. Thank you, Your Honors. I appreciate that. Thank you.
judges: Rao, Garcia, Rogers